ANDERSEN and wife, Appellants, vs. MEYER and others, Respondents.*

*April 14—May 11, 1948.*

* Motion for rehearing denied, with $25 costs, on July 1, 1948.

534

For the appellants there were briefs by *Vaudreuil & Vaudreuil* of Kenosha, and oral argument by *L. E. Vaudreuil*.

For the respondents there was a brief by *Hammond & Hammond* of Kenosha, and oral argument by *Walter W. Hammond.*

HUGHES, J.   In 1937 the appellants Andersen and his wife purchased a two-hundred-acre farm in Kenosha county, for which they paid $18,000.   They lived there from that time on and added substantial improvements to the buildings.

Mr. and Mrs. Meyer, who owned a printing and engraving business in Chicago known as the Ed Meyer Engraving Company, were friends of the Andersens and visited at the farm. In the spring of 1945 they rented an apartment in the Andersen home and with the Andersens engaged in a chicken-raising business venture.

In 1946, Mr. Meyer was looking at farms in the neighborhood and expressed a desire to move his business from Chicago to a farm near Kenosha.   The parties finally agreed that they would form a corporation to be known as Andersen-Meyer, Inc.   The assets of the corporation were to be the printing business of Meyer which he represented to be worth $10,000, and the Andersen farm which all parties agreed would be put in on the basis of cost price subject to the $10,000 mortgage

against it, which, with the personal property of $1,500, would make a contribution by Andersen of $9,500.

Meyer insisted upon having control of the corporation and it therefore was agreed that he and Mrs. Meyer would have one hundred shares of the corporate stock and the Andersens, ninety-five shares.

It was the position of Meyer that Andersen was unable to keep up the payments on the farm mortgage and taxes and borrowed money from Meyer to meet those obligations, and that Andersen was interested in putting the farm into the corporation so that he would not lose it; that the original plan was that the corporation, in the operation of a printing establishment on the farm, would be operating only a branch of the Ed Meyer Engraving Company; and that Meyer's sole obligation under his agreement with Andersen was to procure printing presses at a cost of $6,500, which he intended to buy, but that because Andersen insisted he finally brought the printing equipment up from the Chicago plant. He further contended that pursuant to the agreement the Ed Meyer Engraving Company continued in business, taking orders from customers and having the work done by the corporation, for which seventy-five per cent of contract price was turned over to Andersen-Meyer, Inc.

Andersen contended that the whole of Ed Meyer Engraving Company was to be turned over to the corporation, and that Meyer's operation of the engraving company on the side constitutes a substantial breach of the original agreement, entitling Andersen to rescission.

The trial court found that if the business of the engraving company was to be turned over to the corporation, it was cured by performance—delivery of the printing presses from the Chicago plant. The court also found that the value of the material turned over by Meyer to the corporation was in excess of $10,000, and that the value of the Andersen farm was $23,000 net after deduction of the $10,000 mortgage which

the corporation assumed and agreed to pay. Finding No. 7 reads:

"The defendants, Edwin A. Meyer and Mary Meyer, transferred to the said corporation the entire assets of the printing and engraving business formerly conducted by them in the city of Chicago, Illinois, together with the good will thereof. They did not transfer assets which were antiquated machinery of little or no value. They transferred to the said corporation and set up on the property of the corporation a printing and engraving plant which was and is well equipped and well organized. There was no failure on the part of the defendants, Edwin A. Meyer and Mary Meyer to comply with any part of their agreement as to transferring assets to the corporation. The defendants, Edwin A. Meyer and Mary Meyer, did not induce the plaintiffs through fraud and misrepresentation to have issued to the said defendants one hundred shares of stock in the Andersen-Meyer, Inc., a corporation so as to enable the said defendants to cheat and defraud the plaintiffs."

In view of the fact that it is conceded that Ed Meyer Engraving Company continued in business under an arrangement whereby it operated as a sales organization of printing matter and retained twenty-five per cent of the contract price paid by its customers and turned over but seventy-five per cent to Andersen-Meyer, Inc., for producing the printed matter sold, we must conclude that this finding is contrary to the evidence.

The testimony adduced upon the trial amply supports the finding of the trial court that at the time of the transfer to the corporation the Andersen farm was worth at least $23,000 over and above encumbrances upon it.

With respect to the value of the property transferred to the corporation by Meyer, Mr. Friend, a witness familiar with printing presses and equipment, testified that it was largely antiquated and could be replaced for $5,000. The trial court in its decision said:

"The property transferred by Meyer to the corporation, although not worth the value which he represented it to be, cannot be considered so grossly inadequate as to constitute fraud. Mr. Friend's testimony will admit of a finding that the property is worth in excess of $8,000. Even though the value of the property transferred was less than represented, under the law there would have to be other facts or circumstances before the court would be justified in rescinding the contract on the ground of fraud. It is true that after the corporation was organized, a resolution was passed to pay the Ed Meyer Engraving Company twenty-five per cent commission on all work solicited and obtained for the Andersen-Meyer Corporation, but this is a matter involving the internal management of the corporation that must and should be reached in an action brought by a minority stockholder. Since Meyer had controlling interest in the corporation, it might be suspicioned that he concealed his intent to charge the corporation the twenty-five per cent commission on all sales at the time the contract was entered into, but courts cannot base a finding upon a suspicion."

Meyer testified that he understood that Andersen was figuring his equity in the farm at $9,500, by deducting the mortgage indebtedness from the purchase price paid for the farm in 1937 and adding $1,500 for the personal property included. He further testified that he was aware that farm values had increased substantially between 1937 and 1946.

We are satisfied that the value of the contribution of Meyer in comparison with the value of the farm transferred by Andersen is grossly inadequate. We cannot agree that the evidence in this case does not rise above the level of suspicion. It is evident from the record that Meyer insisted upon control of the corporation in spite of the great disparity in value of contributions, and that the basis of his insistence was the great producing value of his own business. His subsequent manipulation of the affairs of the corporation so as to transfer the profits from it to the Ed Meyer Engraving Company evinces

a scheme on his part from the inception to defraud the appellants, which entitles them to a rescission.

*By the Court.*—Judgment reversed, and cause remanded with instructions to enter judgment in accordance with this opinion.